UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIAM BOUCHEZ,
        Plaintiff,

vs.                                                                08-1059

ROGER WALKER, et.al.,
        Defendants.

SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants motions for summary judgement. [d/e 43, 46]

## I. BACKGROUND

The plaintiff filed this lawsuit pursuant to 42 U.S.C. §1983 against five defendants including Illinois Department of Corrections Director Roger Walker, Warden Eddie Jones, Assistant Warden Mathy, Assistant Warden Hardy and Medical Director Sylvia Mahone.  The plaintiff has the following surviving claims:

> 1) The defendants violated the plaintiff's Eighth amendment rights when they were deliberately indifferent to his serious medical condition; and,
> 2) Defendants Walker, Jones, Mathy and Hardy were negligent in violation of Illinois state law. *See* March 20, 2008 Merit Review Order; July 8, 2008 Case Management Order.

Specifically, the plaintiff alleged that on February 17 and 18 of 2007, he had complained that he was experiencing chest pain, but his complaints were ignored.  The plaintiff says he was not allowed to go to the Health Care Unit until February 19, 1007, but Defendant Dr. Mahone made him wait an additional two and half hours before he was taken to an outside hospital.  The plaintiff says he suffered a stroke and the long delay resulted in some paralysis.  In addition, the plaintiff says when he returned to Pontiac Correctional Center, the defendants interfered with his treatment by delaying medications, failing to provide therapy and refusing to assign him to a lower bunk.

Dr. Mahone and the Illinois Department of Corrections Defendants (herein IDOC) have each filed motions for summary judgement.

## II.  FACTS

The plaintiff did not directly respond to the plaintiff's statements of undisputed facts.  Therefore the following facts are taken from the defendants' motions and attached exhibits.

The medical records show that the plaintiff reported to the Health Care Unit at about 9:45 a.m. on February 19, 2007 and was seen by a nurse. The plaintiff stated that he had suffered from headaches for the past two days. The nurse noted that the plaintiff also said he felt some numbness on his right side and he had decreased grip strength. The plaintiff was able to count and his speech was not slurred. The nurse also took the plaintiff's pulse and blood pressure which appeared to be fine. (Def. Memo, Mahone Aff, p. 1-2)(Def. Memo, Plain, Depo, p. 29) Nonetheless, an ambulance was called at 10:05 a.m.

At 10:20 that morning, the plaintiff reported no change in his condition and the ambulance arrived to transport the plaintiff to the hospital. Dr. Mahone noted in the record that the plaintiff left by 10:22 a.m. and she administered aspirin to the plaintiff. (Def. Memo, Mahone Aff, p. 1-2). The plaintiff states he arrived at the hospital sometime after 10:00 in the morning. (Def. Memo, Plain. Dep, p. 29) The plaintiff also says this February 19, 2007, incident was his first encounter with Dr. Mahone. (Def. Memo, Plain. Aff, p. 29)

Defendant Mahone states that on February 19, 2007, she suspected that the plaintiff "was suffering from a case of Bell's palsy. However, in order to rule out that he was not suffering a stroke, I ordered the Plaintiff transferred to St. Joseph's Hospital." (Def. Memo, Mahone Aff, p. 2).

At the hospital, the plaintiff was diagnosed with Bell's palsy by Dr. William Raino and returned to Pontiac Correctional Center on February 21, 2007. The nurse noted on the plaintiff's return that the plaintiff's speech was clear, but he did have a facial droop on his right side. (Def. Memo, Mahone Aff, p. 3). Dr. Mahone states that "Bell's palsy is not a stroke." (Def. Memo, Mahone Aff, p. 7)

The medical records demonstrate that Dr. Mahone ordered the continuation of the medication prescribed by the hospital neurologist. Dr. Mahone also prescribed an anti-viral medication and ointment for the plaintiff's eye. (Def. Memo, Mahone Aff, p. 3)

Dr. Mahone saw the plaintiff again on March 2, 2007. The medical records indicate the plaintiff stated he was feeling okay, but had muscle spasms at the back of his head. The plaintiff also asked for more eye ointment. The doctor observed that the plaintiff did not appear to be in distress and was able to talk well. The doctor noted the plaintiff was suffering some residual effects of his Bell's palsy episode. The facial droop on the plaintiff's right side had lessened. Dr. Mahone ordered that the plaintiff return for a visit in a month and ordered various medications for the plaintiff. (Def. Memo, Mahone Aff, p. 3-4).

On March 8, 2007, the plaintiff was seen in the general medicine clinic. The plaintiff had numbness to the left side of his face and his left eye did not close when he blinked. Dr. Mahone says on this date, the medical records show the plaintiff was provided with education as to his Bell's palsy and the time needed to resolve his problems. The plaintiff was prescribed Tylenol for his complaints of pain. (Def. Memo, Mahone Aff, p. 4-5).

On March 12, 2007, the plaintiff was seen for an urgent care visit. The plaintiff complained that he had a sharp pain in the back of his neck going to his skull. The plaintiff said

he had the pain for a week, but it had gotten worse. The plaintiff said he felt dizzy and felt numbness in his face. The plaintiff's speech was also slurred. (Def. Memo, Mahone Aff, p. 5)

Dr. Mahone was consulted on treatment for the plaintiff and ordered that the plaintiff continue with the Tylenol and report back for an examination with Dr. Mahone four days later. (Def. Memo, Mahone Aff, p. 5)

On March 16, 2007, Dr. Mahone examined the plaintiff. The plaintiff still complained of neck pain, but said he was eating better. The doctor noted no acute distress and noted that his facial droop had improved. The doctor also noted spasms in the plaintiff's neck. The doctor prescribed an analgesic balm to apply to his neck as well as Tylenol. (Def. Memo, Mahone Aff, p. 5-6).

Dr. Mahone saw the plaintiff on August 14, 2008. The plaintiff had lost a significant amount of weight, over 100 pounds, due to eating mostly vegetables. His weight was currently 254 pounds. The plaintiff's Bell's palsy had completely resolved. His speech was clear and there was no facial drooping. In addition, the plaintiff was able to use both hands with equal dexterity. (Def. Memo, Mahone Aff, p. 6-7) This was the plaintiff's last visit with Dr. Mahone. However, Dr. Mahone says the medical records indicate the plaintiff continued to see medical personnel on multiple occasions for any medical complaints.

Dr. Mahone says while the plaintiff alleges he has been unable to write with his right hand, his signature before and after Bell's palsy is identical. (Def. Memo, Mahone Aff, p. 7, Ex. 10, 11).

The exact cause of Bell's palsy is unknown and "[n]ot everyone who suffers from Bell's palsy gets a full recovery." (Def. Memo, Ex. B, Dr. Raino Ltr.) About 75 percent of people with Bell's palsy will recover and 25 percent will see varying degrees of recovery. The doctor who initially diagnosed the plaintiff with Bell's palsy says weight loss and right-sided arm and leg problems would not be related to Bell's palsy. (Def. Memo, Ex. B, Raino Ltr.)

Defendant Eddie Jones says he was the Warden at Pontiac Correctional Center during the relevant time period. Jones says he has no medical training and relies on medical personnel to provide appropriate treatment to inmates. Jones says he has reviewed a grievance officer's report that purports to have his signature dated May 18, 2007. However, Jones says he did not personally review or sign this grievance. Instead, the grievance went through the normal procedure and a member of his executive staff, Pearlene Pitchford, handled the review and signed the document as his designee. (Def. Memo, Jones Aff., p. 1)

Defendants Marcus Hardy and Joseph Mathy say they were Assistant Wardens at Pontiac Correctional Center and have no medical training. The defendants say they are not qualified to provide medical care and had no involvement in the diagnosis, treatment or medical care of the plaintiff. Any requests for sick call that they do receive, are forwarded to the Health Care Unit. (Def. Memo, Hardy Aff, p. 1).

Sarah Johnson says she is the Chairperson of the Office of Inmate Issues. Johnson says

the plaintiff properly appealed a grievance in which he complained generally of medical treatment, he did not specifically name Defendants Hardy, Jones or Mathy. In addition, Johnson says she has reviewed the grievance that purports to have Director Walker's signature, and notes that it was actually signed by his designee, Terri Anderson, as is routine procedure. Therefore, Defendant Walker did not review or respond to the plaintiff's grievance. (Def. Memo, Johnson Aff, p. 2)

The defendants have provided a copy of the March 26, 2007 grievance concerning medical care. The plaintiff begins his grievance by stating that he was taken to St. Joseph Hospital on February 19, 2007 due to a stroke. The plaintiff complains that he has not received proper medical care form the medical department and specifically Dr. Mahone since his return. There is no mention of any prison staff members in connection with his lack of care. (Def. Memo, Johnson Aff, Ex. 1). The plaintiff agrees this is the only grievance he filed concerning his medical treatment at Pontiac Correctional Center.

## III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A. EXHAUSTION

The IDOC defendants say the plaintiff cannot demonstrate that he exhausted his administrative remedies. The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v Bock,* 549 U.S. 199, 218 (2007) The grievance procedure applicable to the Illinois Department of Corrections requires details about what happened, when, where and the name of those involved if possible. 20 Ill.Admin.Code §504.810(b).

In addition, the Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The defendants have presented evidence that the only grievance the plaintiff filed made no mention of any problems with any IDOC defendant. The only concerns in the complaint pertain to his treatment or lack of treatment within the Health Care Unit. The court does not believe the plaintiff has adequately demonstrated that he exhausted his administrative remedies for his claims against Defendants Walker, Jones, Mathy and Hardy.

However, even if the plaintiff had exhausted his remedies for his claims against the IDOC defendants, the court would still grant summary judgement for these defendants because the plaintiff has failed to demonstrate how they are personally liable for his claims. "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). In addition, the doctrine of *respondeat superior* (supervisor liability) does not apply. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996).

There is no evidence before the court that any of these defendants had any involvement with the plaintiff's claims. Neither Defendant Walker nor Defendant Jones received, reviewed or signed the plaintiff's grievances. In addition, none of these defendants have any medical training and had no involvement in providing medical care to the plaintiff. As a non-medical defendant is not liable for reasonably relying on the medical judgment of professionals. *McEachern v. Civiletti,* 502 F.Supp. 532, 534 (N.D.Ill.1980). The IDOC defendants motion for summary judgement is granted. [d/e 44].


## B. DELIBERATE INDIFFERENCE

Dr. Mahone states that the plaintiff cannot demonstrate that she was deliberately indifferent to his serious medical condition. In order to demonstrate that Dr. Mahone violated the Eighth Amendment, the plaintiff must pass both an objective and a subjective test. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.

The second prong of the test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support a constitutional violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997). Deliberate indifference is "something approaching a total unconcern for [the plaintiffs'] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v Lane,* 959 F.2d 673, 677 (7th Cir. 1992).

[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford,* 2001 WL 456427 at 6. However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

In response to the summary judgement motion, the plaintiff continues to allege that he suffered from "what appeared to be a stroke" and his medical care was delayed by 2 ½ hours. (Plain Resp, p. 1). The plaintiff claims Dr. Mahone then delayed the medications that were prescribed by hospital doctors for 3 ½ weeks. The plaintiff says as a result, he can't properly eat, has blindness in his right eye, has problems talking and can't write with his right hand.

The plaintiff has provided absolutely no evidence to support his claims. The medical records show the plaintiff did not suffer from a stroke. The doctors at the outside hospital made

the diagnosis of Bell's palsy. In addition, there is no evidence that Dr. Mahone delayed medical treatment. Both the medical record and the plaintiff's own deposition show he was transported to the hospital shortly after he arrived at the Health Care Unit. The medical record also demonstrates that the plaintiff's hospital medications were continued at Pontiac Correctional Center by Dr. Mahone.

Even if there was some evidence of a delay in receiving treatment, the plaintiff has failed to provide verifying medical evidence that the delay had any detrimental impact on his condition. In fact, while the plaintiff claims he still suffers due to the conduct of the defendants, the medical record shows the plaintiff had recovered from Bell's palsy by August 14, 2008. This was the last time the plaintiff saw Dr. Mahone, but he continued to received medical care. Nonetheless, the plaintiff has presented no evidence of any continued medical problems.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). The plaintiff has failed to show that any material facts are in dispute. Dr. Mahone's motion for summary judgement is granted.

C. NEGLIGENCE

The defendants also argue that since the alleged acts of negligence "arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment, sovereign immunity will bar maintenance of the action" in any court other than the Illinois Court of Claims. *Turner v Miller*, 301 F.3d 599, 602 (7th Cir. 2002). Any duty the IDOC employees owed the plaintiff existed only because of their employment. Therefore, the court does not have subject-matter jurisdiction over the plaintiff's negligence claim.

**IT IS THEREFORE ORDERED that:**

1. **The defendants' motions for summary judgment are granted [d/e 43, 46]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. This case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)c. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

3. **The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are**

available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

4.      The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of her obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

5       The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 16th day of February, 2010.

s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE